Hoey and others vs. Pierron.

HOEY and others, Respondents, vs. PIERRON, Appellant. SAME, Appellants, vs. SAME, Respondent.

*November 4 — November 23, 1886.*

APPEAL TO S. C.  *(1, 2) Interlocutory order: Retaxation of costs.  (3) When respondent's exceptions available.  (4) Reversal of judgment: Evidence: Immaterial error.*

CHATTEL MORTGAGES: FRAUDULENT CONVEYANCE: VOLUNTARY ASSIGNMENT.  *(5) Mortgage for larger sum than due.  (6, 7) Husband and wife: Burden of proof.  (8) Insufficient consideration for one of several mortgages.  (9) Several mortgages not a general assignment.  (10) Mortgagee taking immediate possession.*

1. An appeal will not lie from an interlocutory order directing a retaxation of the costs which have been inserted in the judgment.

2. Such order may be reviewed on an appeal from the judgment itself when the errors complained of appear upon the record.

3. The respondent's exceptions may be available to sustain a judgment in his favor, but are not available to him to reverse a portion of the judgment and obtain a more favorable one.

4. An error in admitting certified copies of chattel mortgages offered by the plaintiff as evidence of their contents, is immaterial when the answer sets out each of the mortgages in detail and the defendant also offered in evidence one of them which was the same in all respects as the others except as to parties and amounts.

5. The mere fact that a mortgage was given for a larger sum than was actually due the mortgagee does not render the mortgage void in law.

6. In a contest between a married woman and her husband's creditors, the burden of showing that a mortgage from him to her was given for a valuable consideration paid out of her separate estate or by some other person for her, is upon the wife; but that being shown, the burden of showing fraudulent intent is upon the creditors.

7. Under sec. 2319, R. S., proof by the plaintiff of an actual indebtedness and the amount thereof is sufficient to shift the burden of proof upon the defendant to show fraud.

8. The fact that one of several mortgages given at the same time is void because given for an insufficient consideration (as a wife's services to her husband), does not, of itself, establish a fraudulent intent in giving the other mortgages.

9. Four chattel mortgages given at the same time are *held* not to constitute a voluntary assignment, it not appearing that they covered all of the debtor's property, and there being no assignment of his accounts, assets, or things in action, and no fraudulent intent on the part of mortgagor or mortgagees. *Winner v. Hoyt,* 66 Wis. 227, distinguished.

10. Where a chattel mortgage recited that the goods were in the possession of the mortgagor and to remain in his possession until taken possession of by the mortgagee, and the latter is authorized to take possession at any time he deems the property or debt insecure, the mere fact that the mortgagee took possession two days after the mortgage was executed does not show the mortgage to be fraudulent and void as to creditors, although it is a fact proper to be considered upon the question of fraud.

APPEALS from the Circuit Court for *Fond du Lac* County.

. Replevin. The case is thus stated by Mr. Justice CAS-SODAY:

"December 16, 1884, one Thomas J. Hoey, having a stock or store of goods at Eden, executed four chattel mortgages upon the same to the several parties and for the several

amounts named, each accompanied by a promissory note of the same amount: December 16, 1884, to the plaintiff *Rosa C. Hoey*, for $250; December 16, 1884, to the plaintiff *Rosa C. Hoey*, for $600; December 16, 1884, to the plaintiff *Maggie L. Smith*, for $852.40; December 16, 1884, to the plaintiff *John O. Smith*, for $115. December 17, 1884, these mortgages were filed with the town clerk in the order named. Thereupon the plaintiffs, or the said *Rosa C. Hoey*, for herself and the other plaintiffs, took possession of the goods covered by the mortgages, and under and by virtue of them, as it is claimed, December 18, 1884, and commenced disposing of the goods, as such mortgagees.

" January 3, 1885, Landauer & Co., having a claim of $529.39 against T. J. Hoey, commenced an action against him, and attached the goods in question; and the defendant, as sheriff, under and by virtue of the attachment, seized the goods and took possession thereof. January 8, 1885, the plaintiffs commenced this action of replevin against the sheriff, alleging the value of the goods so seized at $978.76.

" The sheriff answered, in effect admitting the value of the goods to be the amount stated, and justifying under the attachment, and then set up in detail the four chattel mortgages and alleged that the rights of the plaintiffs under them were only colorable, and that each was given with the intent that said Thomas J. Hoey should continue in possession and sell the goods; and that said mortgages were each fraudulent and void as to the creditors of said mortgagor, and particularly Landauer & Co., and that the plaintiffs were participants in the fraud.

" It was conceded on the trial, and before, that the only consideration for the note and mortgage of $600 was services previously rendered by the said *Rosa C. Hoey* for the said Thomas J. Hoey, who was her husband, and hence that that mortgage was void in law, and the plaintiffs

therefore claimed nothing under it; and it was accordingly withdrawn from the jury upon the trial. It appeared, from the undisputed evidence upon the trial, that at the time of executing the chattel mortgages Thomas J. Hoey was indebted to *John O. Smith* in a sum exceeding the $115, the amount of the note and mortgage he then gave him.

"Upon the trial of the action the jury returned a special verdict to the effect that when the chattel mortgages were given there was due and owing to the said *Rosa C. Hoey* $205.87 from said Thomas J., and to the said *Maggie L. Smith* $806 from the said Thomas J., and that neither the said *Rosa C.* nor the said *Maggie L.* accepted her chattel mortgage knowing that it exceeded the amount actually due her from said Thomas J.; that the said Thomas J. did not make and execute the mortgage of $250 to said *Rosa C.*, nor said mortgage to said *Maggie L.*, nor said mortgage to said *John O. Smith*, with the intent to hinder, delay, or defraud his creditors; that neither the said *Rosa C.* nor the said *Maggie L.* took such mortgage to her with the intent to hinder, delay, or defraud the creditors of the said Thomas J.; that neither the said *Rosa C.* nor the said *Maggie L.* nor the said *John O. Smith*, at the time of taking such mortgage to her or him respectively, knew that the same had been made by the said Thomas J. with the intent to hinder, delay, or defraud his creditors; nor did either of them have knowledge of facts sufficient to put an ordinarily cautious and intelligent person on inquiry, and which, if acted upon and investigated, would have enabled her or him to have known that he had such fraudulent intent; that at the time of such attachment the said *Rosa C.* had the sole, open, notorious, and exclusive possession of the property and stock of goods described in the mortgages, and held such possession under and by virtue of such mortgages; that the said *Rosa C.* took such possession for herself and as agent of the other

two plaintiffs, without any intent to hinder, delay, or defraud the creditors of said Thomas J.; that when the said *Rosa C.* claims to have taken such possession there was no implied or express understanding and arrangement between her and her husband that he might sell and dispose of the mortgaged property and apply the avails to his own use; that the said Thomas J. did not, after he made the chattel mortgages in question, continue in possession of the mortgaged property, and sell the same in the usual course of trade, and apply the avails thereof to his own use with the knowledge and consent of said *Rosa C.*

" Thereupon, and on February 23, 1886, judgment was entered upon said special verdict, reciting the same, wherein it was, in effect, adjudged that the said plaintiffs were entitled to the immediate possession of the goods, chattels, and property mentioned and described in the complaint; that January 3, 1885, the defendant unlawfully and wrongfully took, and wrongfully and unlawfully detained, from the possession of said plaintiffs said goods, chattels, and property; that the value thereof was $978.72; that by reason thereof said plaintiffs had been injured to their damage of six cents; that the plaintiffs have and recover of the defendant their costs and disbursements, taxed at $230.78. May 1, 1886, an order was made by said trial court, reciting an appeal from the taxation of costs by the clerk therein, and wherein it was ordered, in effect, that the action of said clerk in the premises be modified and the costs retaxed by disallowing certain items mentioned. May 12, 1886, the plaintiffs served the usual undertaking and notice of appeal to this court from said order for retaxation. July 7, 1886, the defendant appealed to this court from the judgment entered February 23, 1886, and subsequently modified as to costs by reducing them from the amount stated to $101.95."

*H. J. Gerpheide* and *Maurice McKenna*, for the plaintiffs.
*Geo. E. Sutherland* and *D. D. Sutherland*, for the defendant.

CASSODAY, J.   1. An appeal will not lie from an interlocutory order regularly obtained, directing a retaxation of the costs which have been inserted in the judgment. *Ernst v. "The Brooklyn,"* 24 Wis. 616; *American B.-H., O. & S. M. Co. v. Gurnee,* 38 Wis. 533; *McHugh v. C. & N. W. R. Co.* 41 Wis. 79.   The manifest reason is that all such interlocutory rulings are finally concluded and determined by the judgment, and as such an order "involves the merits and necessarily affects the judgment," it may be reviewed upon an appeal from the judgment itself whenever the errors complained of appear upon the record transmitted. *Ibid.;* R. S. sec. 3070.   The case is distinguishable from that class where no such review can be had on appeal from the judgment, as in *Johnson v. Curtis,* 51 Wis. 595.   For these reasons the appeal from the order must be dismissed.

2. The exceptions taken to the order and retaxation are not available to the plaintiffs upon this appeal by the defendant from the judgment, for several reasons.   They are not incorporated in the bill of exceptions.   If they were, still they would not be available to the plaintiffs, for the judgment returned in this record is for costs as originally taxed and not as subsequently modified; and the plaintiffs were in no way aggrieved by such original taxation.   Should the record be remitted and amended so as to include such exceptions and the modified judgment, still such exceptions would not be available to the plaintiffs; for, as frequently held by this court, although a respondent's exceptions may be available in sustaining a judgment in his favor, yet they are not available to him for the purpose of reversing a portion of the judgment and obtaining a more favorable one. *Maxwell v. Hartmann,* 50 Wis. 660; *Witt v. Trustees,* 55

Wis. 376; *Jones v. Jones*, 64 Wis. 301.    The obvious remedy of the plaintiffs, if any, was to appeal from that portion of the judgment as modified which related to costs, with a bill of exceptions covering the matters of retaxation.    For the benefit of the plaintiffs we would suggest that there seems to be no error in disallowing the taxation of the lengthy inventory of items in detail in no way descriptive of the identity of the property taken, nor of any other item of costs so disallowed.

3. On the trial, the plaintiffs offered certified copies of the chattel mortgages, and the defendant objected to their being received for any other purpose than to show the fact of filing.    The objection was overruled, and the defendant excepted.    This ruling is claimed to be in conflict with sec. 2318, R. S., which makes such copies evidence " only of the fact " of filing, " and of no other fact." Such is manifestly the statute.    But here the answer sets up each of the chattel mortgages in detail, and defendant offered one of them in evidence, which was the same in all respects as each of the others except as to parties and amounts.    Under this state of facts, the objection, though otherwise well taken, is not available to the defendant here.    *Woodruff v. King*, 47 Wis. 261.

4. It is claimed that two of the chattel mortgages were void in law, and should have been withdrawn from the jury, because each was taken for some forty odd dollars more than the jury found to be due at the time.    The mere fact that each was given for a larger sum than was actually due such mortgagee at the time did not render the mortgage void in law.    *Barkow v. Sanger*, 47 Wis. 500; *Kalk v. Fielding*, 50 Wis. 339; *Carter v. Rewey*, 62 Wis. 556.    The " question of fraudulent intent," in all such cases, is " deemed to be a question of fact, and not of law."    Sec. 2323, R. S. Here, the evidence explains how two of the mortgages came to be given for more than was due at the time, and

the other for less than was due at the time. The court would not have been justified in withdrawing the two mortgages from the jury upon the ground stated. The jury found the mortgages were accepted without either of the mortgagees knowing her mortgage exceeded the amount actually due.

5. Was it error not to charge, as requested, that the burden of proof was upon *Rosa C. Hoey*, so far as she was concerned in the transactions with her husband? The first question of the special verdict as to the amount actually due to *Rosa C. Hoey* from her husband at the time of giving the mortgage was, as appears from a portion of the charge not excepted to, "answered by consent of counsel, $205.87." That such amount was then due must therefore be regarded as a verity in the case. *Buechel v. Buechel*, 65 Wis. 536. As to whether the debtor made and executed that mortgage to his wife with the intent to hinder, delay, or defraud his creditors, the court charged the jury that the burden of proof was upon the defendant to show by clear and satisfactory evidence that it was made by him with such intent. This is assigned as error. Undoubtedly the burden of proving that the mortgage to the wife was given to secure an actual indebtedness to her from her husband for moneys or property advanced by her from her separate estate, or by some other person for her use, was upon the wife; but when that was proved and, in effect, admitted, it shifted such burden to the defendant. *Semmens v. Walters*, 55 Wis. 683, 684; *Evans v. Rugee*, 57 Wis. 624. Assuming that the defendant made a case within the provisions of sec. 2319, R. S., which, in such case, declares that "the burden shall be upon the plaintiff to show that such mortgage was given in good faith, and to secure an actual indebtedness, and the amount thereof," yet it has often been held, in effect, by this court that the establishment of such "actual indebtedness and the amount thereof" satisfies the requirements of the section and shifts

the burden of proof to such defendant. *James v. Van Duyn*, 45 Wis. 518; *Kalk v. Fielding*, 50 Wis. 346, 347; *Semmens v. Walters*, 55 Wis. 683, 684; *Evans v. Rugee*, 57 Wis. 624; *Shores v. Doherty*, 65 Wis. 153.

6. It is claimed, in effect, that as the four mortgages were executed at the same time, they should be regarded as a part of the same transaction; and, as the $600 mortgage was void, they should all be regarded as fraudulent and void as to the mortgagor's creditors. But the invalidity of the note and mortgage of $600 was by reason of their being given for an insufficient consideration, to wit, the wife's services for her husband. That fact, of itself, did not establish any intent on the part of the mortgagor to hinder, delay, or defraud his creditors in giving either of the other mortgages; but the fact was, nevertheless, submitted to the jury, in connection with the other evidence, as a circumstance to be considered in determining whether any of such other mortgages were given with such intent.

7. It is urged that, as the four mortgages were given together, they must be regarded as a voluntary assignment, within the rule laid down in *Winner v. Hoyt*, 66 Wis. 227. The cases, however, are broadly distinguishable, as will readily be perceived by comparing the facts as stated in each. Here it is enough to say that there is no evidence that the mortgages covered all the property of the debtor. There was no assignment of the debtor's accounts, assets, or things in action. Besides, the jury have negatived any intent on the part of the mortgagor to hinder, delay, or defraud his creditors, and also of any knowledge of such intent upon the part of either of the mortgagees, or any knowledge of facts sufficient to put an ordinarily cautious and intelligent person upon inquiry. If the special verdict is supported by the evidence, it takes the case entirely out of the rule in *Winner v. Hoyt, supra.*

8. It is said that the mortgages were void because they

Hoey and others vs. Pierron.

did not disclose the actual transaction between the parties, in that each mortgage recited, in effect, that the goods were in possession of said mortgagor and to remain in his possession until the same should be taken possession of by said mortgagee as therein provided, with the usual clause authorizing the mortgagee to take possession at any time he or she deemed the property or the debt insecure; and that, under such clause, the mortgagees did take possession, as stated. The mere fact of taking such possession two days after the execution of the mortgages did not make the mortgages void, although it was a fact necessarily considered by the jury in rendering the special verdict. If that is sustained by the evidence, then it is an end of that question.

9. It is strenuously urged, with much elaboration and ability, that the trial court should have set aside the verdict of the jury as perverse; and the failure to do so is assigned as error. After a very careful consideration of the evidence we are forced to the conclusion that it is sufficient to sustain the verdict. It is unnecessary to say more on this point.

We have thus disposed of all the assignments of error, and in substance all the exceptions contained in the record.

*By the Court.*— The appeal from the order of the circuit court is dismissed. The judgment of the circuit court is affirmed upon the merits, but without prejudice as to any order, proceeding, or action which has or may be had or taken in regard to the retaxation of costs.